UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CLARIDGE, *on behalf of himself and all others similarly situated*, | ) ) ) | CASE NO.  1:23-CV-02240 |
| Plaintiff, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| BURNTWOOD TAVERN HOLDINGS, LLC, *et al.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

Before the Court is Defendants' Motion for Partial Judgment on the Pleadings.  (Doc. 48.)  The motion is fully briefed.  (Docs. 48, 49, 50.)  Also before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 53) and Defendants' Motion for Partial Summary Judgment (Doc. 54).  The cross-motions are fully briefed.  (Docs. 53, 58, 60; Docs. 54, 57, 59.)

For the reasons stated herein, Defendants' Motion for Partial Judgment on the Pleadings (Doc. 48) is GRANTED in part and DENIED in part.  Plaintiff's Motion for Partial Summary Judgment (Doc. 53) is GRANTED.  Defendants' Motion for Partial Summary Judgment (Doc. 54) is DENIED.

## I.      MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A.      Complaint Allegations[1]

On November 17, 2023, Plaintiff William Claridge ("Plaintiff" or "Claridge") brought this collective action on behalf of himself and all others similarly situated against Defendants

---

[1] The facts alleged in the Complaint are taken as true for purposes of this motion.  *See Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017).

Burntwood Taven Holdings LLC, d/b/a Burntwood Tavern, and Burntwood Tavern Brecksville, LLC (collectively "Defendants" or "Burntwood").  (Doc. 1.)  Burntwood operated several "Burntwood Tavern" restaurants in Ohio.  (*Id.* at ¶ 18.)  Claridge alleges Burntwood violated the Ohio Minimum Fair Wage Standards Act ("OMFWSA") (Count I) and the Fair Labor Standards Act ("FLSA") (Count II) by failing to pay workers their earned minimum wages.  (*Id.* at ¶ 1.)

From June 6, 2022, to November 14, 2022, Claridge worked as a server at the Burntwood Tavern location in Brecksville, Ohio.  (*Id.* at ¶ 33.)  Claridge alleges Burntwood violated the FLSA and OMFWSA by improperly taking a tip credit for tipped employees in two ways: (1) requiring tipped employees to perform work unrelated to their tipped occupation; and (2) requiring tipped employees to perform tip-supporting work in excess of 20% of the time and/or in excess of 30 minutes.  (*Id.* at ¶ 7.)

Claridge alleges because Burntwood required tipped workers to perform unrelated work that did not generate tips, these employees were engaged in dual occupations while being compensated at the tip credit rate.  (*Id.* at ¶ 34.)  The unrelated work included "cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows and window sills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses."  (*Id.* at ¶ 7a.)

Claridge also asserts Burntwood required tipped workers to spend a substantial amount of time, in excess of 20% and/or for a continuous period exceeding 30 minutes, performing tip-supporting work.  (*Id.* at ¶ 36.)  The tip-supporting work included

> cleaning and stocking the serving line; cleaning booths, chairs, high chairs and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

(*Id.* at ¶ 7b.)

### B.    Procedural History

On May 9, 2024, the parties stipulated to Court-Supervised Notice for the following class of individuals: "All current and former servers and/or bartenders who worked for Burntwood at one or more of its restaurant locations in Ohio for at least one week between March 27, 2021, and the present."  (Doc. 49 at 358 (citing Doc. 20).)[2]  On August 5, 2024, the Court approved the parties' stipulation and authorized notice to the stipulated class.  (*See* Doc. 23.)

On August 23, 2024, the United States Court of Appeals for the Fifth Circuit issued its decision in *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163 (5th Cir. 2024) ("*Restaurant Law Center*").  The Fifth Circuit vacated the Department of Labor's ("DOL") December 2021 Final Rule (the "2021 Final Rule").  *See Rest. L. Ctr.*, 120 F.4th at 167, 177.  The 2021 Final Rule modified 29 C.F.R. § 531.56, which addresses when an employee can be considered a "tipped employee" under the FLSA.

On April 24, 2025, Defendants filed their Motion for Partial Judgment on the Pleadings.[3] (Doc. 48.)  To Defendants, since Plaintiff's FLSA claims were brought under the 2021 Final Rule modifications that the Fifth Circuit vacated in *Restaurant Law Center*, Plaintiff's federal claims fail as a matter of law and must be dismissed with prejudice.  (*Id.* at 334.)

In response, Plaintiff asserts the *Restaurant Law Center* decision has no material impact on his claims.  (Doc. 49 at 355.)  To Plaintiff, the decision merely reinstated the prior dual jobs

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

[3] Defendants only move as to Plaintiff's federal claims under the FLSA in Count II.  (*See* Doc. 48 at 334.)

regulation found in 29 C.F.R. § 531.56, and courts in the Sixth Circuit have repeatedly found that Plaintiff's claims are supported by longstanding regulations and policy.  (*Id.* at 355-56.)

## C.       Regulatory Background

"Congress enacted the [FLSA] in 1938 in response to national concern that the price of American development was the exploitation of an entire class of low-income workers."  *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018).  To protect workers, the FLSA requires that employers pay their employees at least $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).  In 1966, the FLSA was amended to define "tipped employee" and subsequent regulations "provide[d], for the very first time, a formula for calculating a tipped employee's wages."  *Rafferty v. Denny's Inc.*, 13 F.4th 1166, 1180-81 (11th Cir. 2021).  The amendment established an exception to the minimum wage for employees who regularly receive more than $30 a month in tips.  *See* 29 U.S.C. § 203(t).  As a result, employers may claim a "tip credit" that allows them to pay tipped employees $2.13 per hour under certain circumstances.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 516.28.

## 1.       The 1967 Dual Jobs Regulation

In 1967, the DOL began "promulgat[ing] a series of regulations to implement the tip credit."  *Haase v. Cameron Mitchell Rests., LLC*, No. 23-cv-1316, 2024 U.S. Dist. LEXIS 355, 2024 WL 23159, at *2 (S.D. Ohio Jan. 2, 2024).  In January 1967, "the DOL issued a notice of proposed rulemaking aimed at 'expand[ing] 29 CFR Part 531 to make provisions responsive' to the 'Fair Labor Standards Amendments of 1966,' specifically the newly amended sections" regarding tipped employees.  *Marsh*, 905 F.3d at 621 (quoting 32 Fed. Reg. 222, 222 (Jan. 10, 1967)).  In September 1967, the DOL promulgated the dual jobs regulation, addressing when an employee is engaged in a tipped occupation.  *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (citing 32 Fed. Reg. 13,575, 13580-81 (Sept. 28, 1967)); *see also Rafferty*, 13

F.4th at 1181 (noting that the notice of proposed rulemaking "did not specifically mention the dual jobs regulation").

The dual jobs regulation, found in 29 C.F.R. § 531.56(e), "distinguished between someone who worked two distinct jobs (*e.g.*, working as a server and as a maintenance employee), and someone who worked only one job but had overlapping duties (*e.g.*, a server who spends some time cleaning tables)." *Haase*, 2024 WL 23159, at *2 (citing 29 C.F.R. § 531.56(e) (1967 version)).  For an employee with two distinct jobs, employers could not claim a tip credit for the time the employee worked in the non-tipped position.  *Id.*  For employees who worked one job with overlapping duties, employers could claim a tip credit for time spent on "related duties" even if those duties were not "by themselves [ ] directed toward producing tips."  *Id.*

### 2.    The 80/20 Rule

In 1988, the DOL issued guidance interpreting the 1967 dual jobs regulation in its Field Operations Handbook ("Handbook," "FOH," or "1988 Guidance").  *Id.*  This guidance created two rules.  *Id.*  First, an employer may not claim a tip credit for time an employee spent on duties that were unrelated to the tipped occupation.  *Id.*  Second, an employer may claim a tip credit for time an employee spent performing duties related to the tipped occupation so long as "those duties were not performed by that employee for more than twenty percent of her working hours."  *Id.* (citing *Rafferty*, 13 F.4th at 1175); *see also* FOH § 30d00(f) (2016).  This interpretation became known as the "80/20 [R]ule."  *Rafferty*, 13 F.4th at 1175.

### 3.    The 2018 DOL Opinion Letter

In 2018, the DOL rescinded the 80/20 Rule by "jettison[ing] any limitation on the amount of duties related to a tip-producing occupation" through an opinion letter (the "2018 Letter").  *Haase*, 2024 WL 23159, at *2 (quoting *Rafferty*, 13 F.4th at 1176).  Under the 2018 Letter, "as long as a tipped employee performed 'duties related to a tip-producing occupation'

contemporaneously with 'direct customer-service duties,' the employer could take the tip credit for all time spent" performing tip-related duties. *Id.* The 2018 Letter also refers employers to the Occupation Information Network ("O*NET"), which is "an online database of worker attributes and job characteristics," to determine "which duties are related to a tipped occupation." *O'Neal v. Denn-Ohio*, No. 19-cv-280, 2020 U.S. Dist. LEXIS 5721, 2020 WL 210801, at *5 (N.D. Ohio Jan. 14, 2020).

### 4. The 2021 Final Rule

In 2021, the DOL promulgated a new dual jobs rule (the "2021 Final Rule"). *See* C.F.R. § 531.56 (2021). Under this rule, employers may claim a tip credit for "work that is part of the tipped occupation." *See* C.F.R. § 531.56(f) (2021). Work that is part of the tipped occupation includes both "[w]ork that produces tips; and [w]ork that directly supports the tip producing work, if the directly supporting work is not performed a substantial amount of time." 29 C.F.R. § 531.56(f)(1) (2021). The 2021 Final Rule defines "substantial amount of time" as exceeding 20% of a workweek or 30 continuous minutes. 29 C.F.R. § 531.56(f)(4) (2021). The 2021 Final Rule therefore created a new "30-Minute Rule" in addition to the longstanding 80/20 Rule. *Id.*

The 2021 Final Rule provides illustrative, but not exhaustive, examples of tip-producing work, directly supporting work, and work that is not part of the tipped occupation in the context of servers. *See* 29 C.F.R. § 531.56(f) (2021).

- "A server's tip-producing work includes providing table service, such as taking orders, making recommendations, and serving food and drink." 29 C.F.R. § 531.56(f)(2)(ii) (2021).

- "A server's directly supporting work includes dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." 29 C.F.R. § 531.56(f)(3)(ii) (2021).

- Examples of work that is not part of the tipped occupation for servers include "[p]reparing food, including salads, and cleaning the kitchen or bathrooms." 29 C.F.R. § 531.56(f)(5)(ii) (2021).

### 5. The *Restaurant Law Center* Case

After the 2021 Final Rule was enacted, it was challenged in the *Restaurant Law Center* case in Texas federal court. While on appeal in the Fifth Circuit, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("*Chevron*"). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) ("*Loper Bright*"). Under *Chevron*, courts deferred to agency interpretations of the statutes those agencies administer. *Loper Bright*, 603 U.S. at 379-80. In *Loper Bright*, in doing away with *Chevron* deference, the Supreme Court instructed federal courts to "exercise their independent judgment in determining whether an agency has acted within its statutory authority, as the [Administrative Procedure Act ("APA")] requires." *Id.* at 412-13.[4]

Considering the *Restaurant Law Center* appeal after *Loper Bright*, the Fifth Circuit determined the 2021 Final Rule was both "arbitrary and capricious" and was contrary to the text of the FLSA. *Rest. L. Ctr.*, 120 F.4th at 174-77. The Fifth Circuit vacated the 2021 Final Rule "insofar as it modifies 29 C.F.R. § 531.56 as promulgated in 1967." *Id.* at 177.

Following the decision in *Restaurant Law Center*, on December 17, 2024, the DOL amended 29 C.F.R. § 531.56 "to reinstate the regulatory text as it appeared prior to the effective date of the 2021 [Final Rule]." 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024).

---

[4] In overruling *Chevron*, the Supreme Court made clear "we do not call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 603 U.S. at 412.

### D. Law and Analysis

### 1. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A complaint must give notice of what the legal claims are and the factual grounds upon which they rest. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A Rule 12(c) "motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted). "[T]he 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

### 2. Applicable Regulations and Guidance

First, the parties dispute the scope of the vacatur announced by the Fifth Circuit in *Restaurant Law Center*. (*See* Doc. 48 at 341-48; Doc. 49 at 360-64.) To Burntwood, the scope of the vacatur is universal and invalidates Claridge's FLSA claims. (Doc. 48 at 341-48.) To

Claridge, the Sixth Circuit does not recognize universal vacatur and even if it did, his claims are still viable.  (Doc. 49 at 360-68.)

Here, the Court need not consider the scope of the *Restaurant Law Center* vacatur. Following the decision, the DOL rescinded the 2021 Final Rule.  89 Fed. Reg. 101884, 101885 (Dec. 17, 2024).  Therefore, the Court must consider whether Claridge's FLSA claims for unrelated work and tip-supporting work are valid under the regulatory scheme that existed before the 2021 Final Rule was enacted.

While *Loper Bright* overruled *Chevron*, the Supreme Court did not address *Auer* deference and specifically reaffirmed that *Skidmore* deference is the appropriate standard to evaluate agency regulations.[5]  *Loper Bright*, 603 U.S. at 394 ("[C]ourts may . . . seek aid from the interpretations of those responsible for implementing particular statutes."); *see id.* at 476 (Kagan, J., dissenting) ("what is usually called *Skidmore* deference continues to apply"); *see also Kisor v. Wilkie*, 588 U.S. 558, 587, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) ("[*Auer*] [d]eference to reasonable agency interpretations of ambiguous rules pervades the whole corpus of administrative law.").  Following *Loper Bright*, the Sixth Circuit reaffirmed that *Auer* deference remains good law.  *See United States v. Prather*, 138 F.4th 963, 975 (6th Cir. 2025) ("Whatever the future of *Auer* deference, as a court of appeals, we are not in the business of overruling Supreme Court precedent. . . . *Auer* (and *Kisor*) remain good law.")  The Sixth Circuit

---

[5] Under *Skidmore* deference, courts are to respect agency interpretations "in formats such as opinion letters . . . to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 2d 124 (1944)). Under *Auer* deference, courts "defer[ ] to agencies' reasonable readings of genuinely ambiguous regulations."  *Kisor v. Wilkie*, 588 U.S. 558, 563, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945)).

also reaffirmed that an agency's interpretation has the power to persuade under *Skidmore*.

*Bivens v. Zep, Inc.*, 147 F.4th 635, 646 (6th Cir. 2025).

Accordingly, the Court will analyze whether the relevant regulations and interpretations in place before the 2021 Final Rule are entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 2d 124 (1944) and *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) where appropriate.  *See Loper Bright*, 603 U.S. at 394.

### a)      The 1967 Dual Jobs Regulation

Under *Loper Bright* and the APA, the Court must conduct an independent judgment to decide whether the DOL was acting within its statutory authority when it promulgated the 1967 dual jobs regulation.  603 U.S. at 412.  The Court may "seek aid from the interpretations of those responsible for implementing particular statutes."  *Id.* at 394.  These interpretations are useful to the Court insofar as they "'constitute a body of experience and informed judgment'" that "may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'"  *Id.* at 394, 402 (quoting *Skidmore*, 323 U.S. at 140; *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98 n.8, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983)).

The Court will carry out its "ordinary job of interpreting statutes, with due respect for the views of the Executive Branch" by applying the framework laid out in *Skidmore*.  *Id.* at 403. *Skidmore* offers "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) (citations and quotations omitted); *see also United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ("The fair measure of deference to an agency administering its own statute has

been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.") (citations omitted).

Taking these factors into consideration, the Court finds that the 1967 dual jobs regulation is entitled to *Skidmore* deference and has the power to persuade. The history of the regulation shows that it was promulgated after months of thorough consideration through the notice and comment process. *See Fast*, 638 F.3d at 878 (citing 32 Fed. Reg. 13,575, 13580-81 (Sept. 28, 1967)); *see also Rafferty*, 13 F.4th at 1181. The reasoning behind this regulation is valid: to implement the 1966 amendments to the FLSA, including the newly created tip credit. *Marsh*, 905 F.3d at 621 (quoting 32 Fed. Reg. 222, 222 (Jan. 10, 1967)). The dual jobs regulation is consistent with Congress's pronouncement of the need for a tipped minimum wage. *Id.* at 626. Likewise, the DOL's later pronouncements have "continuously endeavored to provide employers with future guidance on the regulation in the form of opinion letters," which ultimately "culminated in the creation of the Guidance in the DOL's Field Operations Handbook[] in 1988." *Id.* Because it has the power to persuade under *Skidmore*, the Court will apply the 1967 dual jobs regulation to the issues in this case. *See also Pender v. S. Flying Wings, Inc.*, No. 21-cv-04292, 2025 U.S. Dist. LEXIS 170682, 2025 WL 2522943, at *10 (S.D. Ohio Sept. 2, 2025)

### b)  The 80/20 Rule

Next, the Court will consider what deference, if any, to grant the 80/20 Rule in the DOL's Handbook. The Sixth Circuit has made clear that because the Handbook was "not subject to the rigors of the Administrative Procedure Act, including notice and comment," it was not entitled to deference under *Chevron*. *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531-32 (6th Cir. 2017) (citations and quotations omitted). For agency interpretations that have not undergone

notice and comment, courts may still defer to an agency under *Auer* if certain conditions are met. *Kisor*, 588 U.S. at 586. However, in both instances where the Sixth Circuit has considered deference to the Handbook, the Sixth Circuit has analyzed the Handbook's persuasive authority under *Skidmore* without also addressing *Auer* deference. *See Stein*, 873 F.3d at 531-32; *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999).

As a result, some district courts have questioned "whether the Sixth Circuit ever gives *Auer* deference to DOL guidance—like the 1988 Guidance—contained in the Field Operations Handbook" and if it "should instead be considered persuasive authority." *Haase*, 2024 WL 23159, at *5. The Handbook itself offers some insight on this issue. In *Matusky v. Avalon Holdings, Corp.*, the district court observed that the Wage and Hour Division of the DOL states that the Handbook "is not used as a device for establishing interpretative policy." 379 F. Supp. 3d 657, 668-69 (N.D. Ohio 2019) (citing https://www.dol.gov/whd/foh/); *see also Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017) (observing that the preface of the Handbook states that "[i]t is not used as a device for establishing interpretative policy"). Accordingly, by its own description, the Handbook is not an official interpretation of a DOL regulation that would warrant *Auer* deference. Instead, this court has previously found that "because [the Handbook] is meant to guide DOL employees in the investigation and enforcement of the dual jobs regulation, it is persuasive evidence of the DOL's intent and should be considered." *Harrison*, 274 F. Supp. 3d at 713.

As such, the Court will assess whether the 80/20 Rule found in the 1988 Handbook is a persuasive authority under *Skidmore*. While discussing a different provision of the Handbook, the Sixth Circuit has held that the Handbook and DOL opinions are "persuasive, not only because they demonstrate that the DOL has maintained a consistent position for several decades,

but also because their reasoning demonstrates that the DOL considered the legality of these provisions in light of the" relevant regulations. *Stein*, 873 F.3d at 533 (discussing impermissible draw policies and overtime violations). The same reasoning applies to the 80/20 Rule. As the culmination of the DOL's efforts to "provide employers with further guidance on the regulation," *Marsh*, 905 F.3d at 626, the Handbook is consistent with DOL's earlier pronouncements. *See Christopher*, 567 U.S. at 159. Moreover, the 80/20 Rule has been the DOL's position for decades,[6] as evidenced by the DOL's multiple amicus briefs defending the rule. *O'Neal*, 2020 WL 210801, at *5; *see also Haase*, 2024 WL 23159, at *7 (holding that the Handbook is a "fair and considered judgment" that "certainly falls within the DOL's substantive expertise"). Other district courts in this Circuit have found the 1988 Handbook and the 80/20 Rule are persuasive authorities. *See Thomas v. Morning Chef, LLC*, No. 23-cv-02179, 2025 U.S. Dist. LEXIS 187781, 2025 WL 2721177, at *5 (S.D. Ohio Sept. 24, 2025); *Pender*, 2025 WL 2522943, at *11-12. This *Skidmore* determination is consistent with Sixth Circuit's view that the DOL Handbook is "persuasive" because it has been "the longstanding position of the [Department]." *Stein*, 873 F.3d at 531–33; *see Myers*, 192 F.3d at 554 (DOL Handbook and Opinion Letters "provide[ ] some persuasive authority," particularly when they concern something the Department has "long construed.").

Accordingly, the Court finds that the 1988 Handbook and its 80/20 Rule are persuasive authorities and will apply them to the issues in this case.[7]

---

[6] There have been a few, brief periods during which the DOL has not followed the 80/20 Rule. *See Rafferty*, 13 F.4th at 1175-76. Nonetheless, the DOL has remained consistent in its position for the vast majority of several decades. *See Haase*, 2024 WL 23159, at *7 n.5.

[7] The parties do not assert the 2018 DOL Opinion Letter should be entitled deference so the Court will not conduct that analysis here.

### 3. Unrelated Work

Courts in this district have identified the following duties as unrelated to a server's tipped job: "taking out trash, scrubbing walls, sweeping floors, cleaning booths, mopping, washing dishes, breaking down and cleaning the expo line, cleaning and restocking restrooms." *Harrison.*, 274 F. Supp. 3d at 713; *see also O'Neal*, 2020 WL 210801, at *8-9. "The dual job analysis turns on whether the employee's untipped duties are 'related' to the tipped occupation and how often they are performed." *Harrison*, 274 F. Supp. 3d at 710 (citing *Osman v. Grube, Inc.*, No. 16-cv-802, 2017 U.S. Dist. LEXIS 105276, 2017 WL 2908864, at *3 (N.D. Ohio July 7, 2017)). "The regulation does not require an employee to hold two distinct *titles* to be employed in a 'dual job.'  Instead, the employee must work in two distinct *capacities*." *Osman*, 2017 WL 2908864, at *3 (emphasis in original).

As to the unrelated work claim, Burntwood recognizes the holding in *Restaurant Law Center* "does not affect the dual-jobs regulation."  (Doc. 48 at 349 (citing *Rest. L. Ctr.*, 120 F.4th at 175).)  Instead, Burntwood argues Claridge's characterization of "dual occupations" in his Complaint is insufficient to state a claim as a matter of law.  (*Id.* at 350-52.)  To Burntwood, Claridge and the other tipped employees were under a single occupation, as either servers or bartenders, and all work performed was incidental to the server or bartender occupation rather than distinct, non-overlapping jobs.  (*Id.*)

Claridge responds that he adequately stated a violation of the dual jobs regulation by alleging he was required to perform unrelated work while being paid the tip credit rate, including cleaning ledges, cleaning the kitchen, cleaning walls, cleaning windows, cleaning bathrooms, and cleaning trays, appliances, silverware, dishes, and glasses.  (Doc. 49 at 368; *see also* Doc. 1 at ¶¶ 7a, 34, 37).)  Under the applicable regulations and guidance, Claridge has alleged sufficient facts to state his unrelated work claim under the FLSA.

### 4. Tip-Supporting Work

Courts in this district have also recognized the following as tip-supporting work: "brewing tea and coffee, wiping down tables, setting tables, busing tables, cutting and stocking fruit, stocking ice, restocking to-go supplies, cleaning ramekins, and restocking all stations." *Harrison*, 274 F. Supp. 3d at 713; *see also O'Neal*, 2020 WL 210801, at *9. Where plaintiffs alleged they were required to perform these tip-supporting duties more than 20% of their regular workweek, courts have found they sufficiently alleged they were required to perform non-tipped duties for a substantial amount of time in violation of the FLSA. *Id.*

Burntwood argues because Claridge's tip-supporting work claim arises under the now-vacated 2021 Final Rule codified in 29 C.F.R. § 531.56(f), his claim fails as a matter of law. (Doc. 48 at 348.) In response, Claridge asserts he can still maintain his tip-supporting work claim under the pre-2021 regulations and guidance. (Doc. 49 at 356, 364-69.)

"Because the 80/20 Rule long predates the 2021 Regulation," the fact that the Final 2021 Rule was rescinded does not impact Claridge's claim under the 80/20 Rule. *Thomas*, 2025 WL 2721177, at *4-5. Claridge alleged he was required to perform tip-supporting work in excess of 20% of the time. (Doc. 1 at ¶¶ 7b, 35, 36.) Taking these allegations as true, Burntwood is not entitled to judgment on the FLSA claim insofar as it rests on violations of the longstanding 80/20 Rule.

However, the Court cannot reach the same conclusion with respect to the 30-Minute Rule. In addition to alleging he performed tip-supporting work more than 20% of the time, Claridge also alleged he was required to perform tip-supporting work "and/or in excess of 30 minutes." (Doc. 1 at ¶¶ 7b, 36.)

As Burntwood correctly points out, the 30-Minute Rule "was new to the [2021] Final Rule and has no analog in the DOL's previous 80/20 guidance." (Doc. 48 at 337 (citing *Rest. L.*

*Ctr.*, 120 F.4th at 168 n.1).)  Accordingly, "[t]he *Skidmore* analysis applicable to the 80/20 Rule does not hold for the 30-Minute Rule."  *Thomas*, 2025 WL 2721177, at *5-6.  In December 2024, the DOL rescinded the 2021 Final Rule, meaning the 30-Minute Rule limitation on the tip credit no longer exists.  *See* 89 Fed. Reg. 101884, 101885 (Dec. 17, 2024).  Claridge cannot maintain his tip-supporting work claim under the 30-Minute Rule.  Therefore, Burntwood's motion for judgment on the pleadings is granted only as to the 30-Minute Rule.

## II.     MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A.     Factual Background

#### 1.     Burntwood Policies and Procedures

Burntwood owned and operated Burntwood Tavern restaurants at the following locations: Chagrin Falls, Rocky River, Solon, Brecksville, Cuyahoga Falls, Crocker Park, Lyndhurst, Fairlawn, Belden Village, and North Olmstead.[8]  (Doc. 53-1 at 475.)  Burntwood Tavern Holdings, LLC operated all locations.  (*Id.*)  All locations generally operated two shifts: lunch (opening) and dinner (closing).  (*Id.* at 475-76.)  All locations also utilized the same employee handbook and Front of House Approach procedural book.  (*Id.* at 478.)  All servers and bartenders were subject to the same timekeeping and pay policies and procedures.  (*Id.*)

Each location employed servers and bartenders.  (*Id.* at 475-76.)  The servers and bartenders were paid at the tipped wage rate, or one-half of the Ohio minimum wage.  (*Id.*)  To-go specialists were also paid the tipped wage rate.  (*Id.* at 476-77.)

Burntwood scheduled at least one server and bartender to come in thirty minutes prior to opening for the lunch shift to perform opening side work.  (*Id.* at 476, 480-81; Doc. 53-2 at 498;

---

[8] The Burntwood Tavern locations at Chagrin Falls, Lyndhurst, and Crocker Park have closed during the pendency of this action.  (Doc. 53-1 at 475.)

Doc. 53-3 at 506; Doc. 53-4 at 515; Doc. 53-5 at 527-28; Doc. 53-6 at 542.)  Some servers and bartenders recalled coming in an hour before the restaurant opened to begin their side work. (Doc. 53-6 at 542; Doc. 53-7 at 554; Doc. 53-8 at 564.)  Burntwood also assigned at least one server and bartender to close each restaurant.  (Doc. 53-1 at 480-81.)  Servers and bartenders did not earn tips while the restaurant was not open.  (*Id.* at 481.)

At some point after this lawsuit commenced, servers and bartenders were instructed to clock in at the full minimum wage rate when opening the restaurant.  (*Id.* at 477.)  They were then told to clock out and back in at the server wage rate once the restaurant opened.  (*Id.*)  This policy did not extend to running side work or closing side work duties.  (*Id.*)  Burntwood did not maintain a separate timekeeping or pay policy for unrelated work performed by tipped employees.  (*Id.* at 492.)

### 2.    Duties of Tipped Employees

Tipped employees at each Burntwood location had designated side work to complete before the restaurant opened (opening), during their shift (running), and after the restaurant closed (closing).  (*Id.* at 483-84; Doc. 53-5 at 527-28.)  Side work duties were assigned based on where the server or bartender was working in the restaurant (bar, expo, side stations) or if there were designated opening and closing workers.  (*Id.*)  Tipped employees believed their side work duties exceeded more than 20% of their workday.  (Doc. 57 at 999-1000; Doc. 57-4 at 1046; Doc. 57-5 at 1057; Doc. 57-6 at 1070; Doc. 57-8 at 1095; Doc. 57-10 at 1157-58.)

Each restaurant posted lists and charts of the required side work.  (Doc. 53-1 at 486; Doc. 53-5 at 525; Doc. 53-6 at 540; Doc. 53-9.)  Most of the side work requirements were consistent across restaurant locations.  (Doc. 53-1 at 486-88; Doc. 53-3 at 506-08; Doc. 53-7 at 555, 557; Doc. 53-9.)

### a)  Opening Side Work

Prior to the restaurant opening, opening servers and bartenders were responsible for setting up the restaurant.  (Doc. 53-3 at 506; Doc. 53-5 at 528.)  Opening side work duties included: cutting lemons, washing dishes; washing silverware; rolling silverware; cleaning and setting up the patio; performing hosting duties; cleaning and setting up tables; setting up pop machines; brewing iced tea and coffee; setting up the expo line; setting up the to-go stations; filling the ice; and making sure bathrooms were stocked and clean.  (Doc. 53-2 at 497-98; Doc. 53-3 at 506; Doc. 53-4 at 515; Doc. 53-5 at 528; Doc. 53-6 at 542-43; Doc. 53-7 at 554-55; 53-8 at 564; *see also* Doc. 53-9; Doc. 53-10.)

### b)  Running Side Work

Servers and bartenders performed running side work during their shift while serving customers.  (Doc. 53-1 at 481, 483.)  If a server or bartender was cut before the end of their shift, they had to perform side work before they could leave.  (*Id.* at 481.)  Running side work duties included: filling ice; bussing and setting tables; performing hosting duties; answering phones; keeping restrooms clean; washing dishes; packaging to-go orders; taking out the trash; rolling silverware; and stocking stations.  (Doc. 53-4 at 516; Doc. 53-5 at 532; Doc. 53-6 at 544; Doc. 53-7 at 554-55; *see also* Doc. 53-9.)

### c)  Closing Side Work

Servers and bartenders were also required to perform closing side work at the end of each shift.  (*See* Doc. 53-9; Doc. 53-10.)  Closing side work duties included: wiping down stations; cleaning counters and shelves; emptying trash; burning ice; washing dishes, glassware, and silverware; rolling silverware; cleaning and breaking down the patio; stocking supplies; checking the bathrooms; cleaning booths; emptying coffee pots; breaking down soda machines; mopping

and sweeping; cleaning the dining area; and cleaning out candles.  (Doc. 53-1 at 484-86; Doc. 53-2 at 499; Doc. 53-3 at 506-07; Doc. 53-4 at 515-16; Doc. 53-5 at 529, 531; Doc. 53-6 at 545; Doc. 53-7 at 554; Doc. 53-8 at 565; *see also* Doc. 53-9; Doc. 53-10.)

### B.       Procedural History

On September 30, 2025, Claridge moved for partial summary judgment.  (Doc. 53.)  To Claridge, Burntwood violated the FLSA's dual jobs regulation by requiring tipped workers to perform work unrelated to their tipped occupation while paying less than the full minimum wage.  (*Id.* at 453.)  Claridge only moves as to liability on his unrelated work claim.  (*Id.* at 464.) The motion is fully briefed.  (Docs. 58, 60.)

Burntwood also moved for partial summary judgment.[9]  (Doc. 54.)  To Burntwood, Claridge's unrelated work and tip-supporting work claims are not based on binding legal authority and must be dismissed as a matter of law.  (*Id.* at 632-636.)  The motion is fully briefed.  (Docs. 57, 59.)

### C.       Law and Analysis

#### 1.       Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)

---

[9] The parties stipulated Claridge does not seek damages for the alleged failure to provide notice of intent to claim the tip credit.  (*See* Doc. 57 at 998 n.1; Doc. 57-1 at 1012; Doc. 59 at 1193 n.1.)

(citations and quotations omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (citations and quotations omitted).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co., Inc.*, 395 F.3d 338, 342 (6th Cir. 2005) (citation omitted).  A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute.  *See* FED. R. CIV. P. 56(c), (e).  Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs.  FED. R. CIV. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citations omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations and quotations omitted).  The Court's role is not to make credibility determinations or "weigh" conflicting evidence.  *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving

parties should prevail as a matter of law." *Id.* "This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party." *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016) (citing *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013)).

### 2. *Mt. Clemens* Burden Shifting Framework

An employee who brings a suit for unpaid minimum wages "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) ("*Mt. Clemens*"). "When an employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* at 687. If an employer has not kept proper and accurate records, *Mt. Clemens* discussed the proper allocation of the burden of proof:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

This burden shifting framework "do[es] not lessen the standard of proof for showing that a FLSA violation occurred" and "does not help plaintiffs show that there was a violation under the FLSA." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009), *abrogated on other grounds by*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). Instead, *Mt. Clemens* merely "gives a FLSA plaintiff an easier way to show what his or her damages are." *Id.*

The parties dispute whether the burden shifting framework discussed in *Mt. Clemens* applies to Claridge's motion for partial summary judgment on liability.  (*See* Doc. 53 at 469-71; Doc. 58 at 1187.)  At this stage, the Court need not apply this framework because Claridge's motion only concerns liability, not damages.  (*See* Doc. 53 at 464 (Claridge requests only a ruling as to Burntwood's liability for violations of the dual jobs regulation).)[10]

### 3. Unrelated Work

"The dual job analysis turns on whether the employee's untipped duties are 'related' to the tipped occupation and how often they are performed."  *Harrison*, 274 F.Supp.3d at 710 (citing *Osman*, 2017 WL 2908864, at *3).  "A server required to do maintenance work was 'effectively employed in dual jobs.'"  *Goeble v. Burntwood Tavern Holdings, LLC*, No. 22-cv-1733, 2023 U.S. Dist. LEXIS 73055, 2023 WL 3092645, at *3 (N.D. Ohio Apr. 26, 2023) (citing *Harrison*, 274 F.Supp.3d at 712); *see also Rafferty*, 13 F.4th at 1189 ("[T]ypical maintenance duties are not related to a server's duties.").  Furthermore, the following tasks could be unrelated to a server's duties:

> [W]orking the grill line and performing the primary job duties of cook; performing the primary job duties of a host or hostess; taking out trash; scrubbing walls; sweeping and mopping floors; cleaning booths; operating the dishtank and performing the primary job duties of a dishwasher; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; stocking stations throughout the restaurant; stocking ice; preparing delivery orders Uber Eats, Grub Hub and Door Dash; preparing takeout orders and online orders . . . ; answering the phone; working the cash register; greeting and seating customers; preparing salads; preparing deserts, ice creams and milkshakes; cutting lemons, limes, melons and strawberries; washing and stocking unsliced fruits; baking biscuits; preparing specialty drinks such as lemonades, limeades and teas; and rolling bins full of silverware.

---

[10] If the issue of damages comes before the Court, the parties may re-brief the applicability of the *Mt. Clemens* framework.

*O'Neal*, 2020 WL 210801, at *8-9; *see also Rafferty*, 13 F.4th at 1189 (contrasting related duties that "have to do with single-step, easily executed food and drink preparations or readying serving items, such as silverware, plates, and dishes for customers' immediate use" with unrelated duties like maintenance, cooking, and dishwashing).

Here, tipped employees demonstrated they performed tasks unrelated to serving and bartending.  Specifically, they introduced lists and charts showing servers and bartenders were assigned side work duties and tasks that included cleaning various parts of the restaurant.  (Doc. 53-9; Doc. 53-10.)  Servers and bartenders testified they performed the following duties: washing dishes, glasses, and silverware; taking out trash; cleaning the patio; cleaning the restaurant; cleaning candle votives; performing hosting duties; filling to-go orders; cutting lemons and other fruit; cleaning stations; and stocking stations.  (Doc. 53-1 at 484-86; Doc. 53-2 at 497-99; Doc. 53-3 at 506-07; Doc. 53-4 at 515-16; Doc. 53-5 at 528-32; Doc. 53-6 at 542-45; Doc. 53-7 at 554-55; 53-8 at 564-65; *see also* Doc. 53-9; Doc. 53-10.)

As for how often tipped employees performed these tasks, Claridge is required to show "more than de minimis claims based on seconds or minutes spent" performing unrelated tasks. *Marsh*, 905 F.3d at 631 (citing *Shaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 555 (7th Cir. 2016) ("[T]he possibility that a few minutes a day were devoted to keeping the restaurant tidy does not require the restaurants to pay the normal minimum wage rather than the tip-credit rate for those minutes.")).  Servers and bartenders testified they spent time on unrelated side work ranging from twenty minutes to over an hour after their shift ended, and at least thirty minutes prior to opening.  (Doc. 53-1 at 481-86; Doc. 53-2 at 497-99; Doc. 53-3 at 506-07; Doc. 53-4 at 515-16; Doc. 53-5 at 528-32; Doc. 53-6 at 542-45; Doc. 53-7 at 554-55; 53-8 at 564-65; *see also* Doc. 53-9; Doc. 53-10.)  That these tasks were listed as part of servers' and bartenders' daily

duties and responsibilities on Burntwood's posted lists and charts shows that the tipped employees' performance of unrelated tasks exceeded "the occasional request" and was instead part of a "continuous practice" that occurred each shift. *Marsh*, 905 F.3d at 631.

Next, Claridge bears the burden of establishing tipped employees were improperly compensated for time spent performing unrelated work. *Mt. Clemens*, 328 U.S. at 686-87. The evidence establishes tipped employees received the tipped minimum wage while performing unrelated work. (*See* Doc. 53-5 at 530-31; Doc. 53-6 at 546-46; Doc. 53-7 at 555-57; 53-8 at 565; *see also* Doc. 58-1.) To be sure, the record also shows at some point, servers were paid the full minimum wage for time spent performing unrelated work at opening. (*See* Doc. 53-1 at 477.) However, these instances of proper compensation do not excuse the periods where tipped employees were not fully compensated for purposes of Burntwood's liability under the FLSA. *See Pender*, 2025 WL 2522943, at *17-18.

In opposition to Claridge's motion, Burntwood argues opening servers and bartenders did not perform opening tasks for more than 20% of their time, and servers did not complete tasks unrelated to the tipped occupation. (Doc. 58 at 1181-82.) But Claridge only moves as to liability on the unrelated work claim, not on the tip-supporting work claim. Because Claridge has cleared the "de minimis" threshold discussed in *Marsh* and *Shaefer*, the precise amount of time tipped workers spent on these tasks is relevant to a damages calculation, not liability. *See Mt. Clemens*, 328 at 686-87. Even if opening side work was compensated at the minimum wage rate, Burntwood does not put forth evidence that unrelated running side work or closing side work was compensated at the minimum wage rate. Burntwood's argument that servers did not perform unrelated work is unsupported by either law or evidence in the record. Burntwood's side work charts show daily instances where servers and bartenders were required to perform

unrelated work.  (*See* Doc. 53-9; Doc. 53-10.)  Burntwood did not maintain a policy regarding unrelated work.  (Doc. 56-1 at 981.)  Servers and bartenders testified they performed unrelated work during every shift and were paid the tipped minimum wage.  (*See* Doc. 53-5 at 530-31; Doc. 53-6 at 546-46; Doc. 53-7 at 555-57; 53-8 at 565.)

Burntwood has not come forward with evidence to show a genuine dispute of material fact as to whether servers and bartenders performed unrelated work.  And there is no genuine dispute of material fact that Burntwood claimed a tip credit for time its tipped employees spent performing unrelated work in violation of the FLSA, the 1967 dual jobs regulation, and the 80/20 Rule.  Accordingly, Claridge's motion for partial summary judgment is granted with respect to liability on his unrelated work claim.

As to Burntwood's motion for summary judgment on the unrelated work claim, Burntwood maintains there is no binding legal authority on which to support Claridge's claims. (*See* Doc. 54 at 634-35.)  But Burntwood does not support its argument with any citation to Rule 56 evidence or any legal authority to show the tasks tipped employees claim were "unrelated" were actually related to their tipped occupation.  (*Id.*)  For the reasons discussed herein, Claridge can maintain his unrelated work claim based on the applicable regulations and guidance that are entitled to *Skidmore* deference.  Burntwood's motion as to the unrelated work claim is denied.

### 4.      Tip-Supporting Work

Tip-supporting work includes "brewing tea and coffee, wiping down tables, setting tables, busing tables, cutting and stocking fruit, stocking ice, restocking to-go supplies, cleaning ramekins, and restocking all stations."  *Harrison*, 274 F. Supp. 3d at 713; *see also O'Neal*, 2020 WL 210801, at *9.  As discussed above, Claridge may assert his tip-supporting work claim under the 1967 dual jobs regulation and longstanding 80/20 Rule by demonstrating tipped employees were required to perform such duties more than 20% of their regular workweek.  *Id.*

Burntwood asserts it is entitled to judgment as a matter of law on the tip-supporting work claim based on the vacated modifications to the 80/20 Rule.  (Doc. 54 at 632-33.)  Rather than cite evidence from the record, Burntwood essentially renews the arguments from its motion for judgment on the pleadings.  (*Compare id.*, *with* Doc. 48 at 348.)  For the reasons discussed herein, this argument fails.  Claridge can state his tip-supporting work claim under the FLSA, the 1967 dual jobs regulation, and the 80/20 Rule.

In opposition, Claridge points to testimony from servers and bartenders who believed their side work duties exceeded more than 20% of their workday while being paid the tipped wage rate.  (Doc. 57-4 a 1046; Doc. 57-5 at 1057; Doc. 57-6 at 1070; Doc. 57-8 at 1095; Doc. 57-10 at 1157-58.)  And Burntwood's posted lists and charts show servers and bartenders were required to perform tip-supporting side work during each shift.  (*See* Doc. 53-9.)  Claridge has established a genuine issue of material fact exists as to whether tipped employees spent more than 20% of their time performing tip-supporting work and were paid less than the full minimum wage.  Burntwood is not entitled to summary judgment on this claim.

## III.    CONCLUSION

For the reasons stated herein, Defendants' Motion for Partial Judgment on the Pleadings (Doc. 48) is GRANTED in part and DENIED in part.  Plaintiff's Motion for Partial Summary Judgment (Doc. 53) is GRANTED.  Defendants' Motion for Partial Summary Judgment (Doc. 54) is DENIED.

**IT IS SO ORDERED.**

**Date:**  March 2, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE