UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CLARIDGE, *on behalf of himself and all others similarly situated*, | ) ) ) | CASE NO. 1:23-cv-02240 |
| Plaintiff, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| BURNTWOOD TAVERN HOLDINGS, LLC, *et al.*, | ) ) ) | **OPINION AND ORDER** |
| Defendants. | ) ) | |

Before the Court is the parties' Joint Motion for Approval of Settlement and Stipulation

of Dismissal with Prejudice.  (Doc. 64.)  Because the Court finds the settlement is a fair

resolution of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and Ohio law, this

motion is GRANTED, the settlement is APPROVED, and this case is DISMISSED with

prejudice.

## I.     BACKGROUND

On November 17, 2023, Plaintiff William Claridge ("Claridge") filed a collective action

against Defendants Burntwood Tavern Holdings, LLC, d/b/a Burntwood Tavern, and Burntwood

Tavern Brecksville, LLC (collectively "Defendants").  (*See* Doc. 1; Doc. 64 at 1259.)[1]  Claridge

alleges Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair

Wage Standards Acts ("OMFWSA"), Ohio Revised Code § 4111.01, *et seq.*, by failing to pay

Claridge and similarly situated workers their earned minimum wages.  (*See* Doc. 1; Doc. 64 at

1258.)  Claridge specifically contends Defendants required Plaintiffs to perform work unrelated

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

to a tipped occupation, and non-tipped directly supporting work in excess of 20% of the time spent working in the week and in excess of 30 minutes in violation of the FLSA and OMFWSA. (*See* Doc. 1 at ¶ 7; Doc. 64 at 1259-60.)

On May 9, 2024, the parties stipulated to court-supervised notice for a class of individuals including all current and former servers and bartenders who worked for Defendants at one or more of its restaurant locations in Ohio for at least one week between March 27, 2021, and the present.  (Doc. 20.)  On August 5, 2024, the Court approved the parties' stipulation and authorized notice.  (Doc. 23.)  Notices were mailed to potential collective members and 145 individuals, including Claridge, opted into the case (collectively "Plaintiffs").  (Doc. 64 at 1260.)

Between January 2025 and August 2025, the parties engaged in formal discovery.  On January 7, 2025, Claridge propounded his First Set of Discovery requests to Defendants.  (*Id*.; Doc. 64-3 at ¶ 21.)  The parties took the depositions of Claridge, six opt-in plaintiffs, and Defendants' corporate representative.  (Doc. 64-3 at ¶ 28.)

On April 24, 2025, Defendants filed a Motion for Judgment on the Pleadings, which Claridge opposed.  (Docs. 48, 49, 50.)

On September 30, 2025, Claridge filed a Motion for Partial Summary Judgment, which Defendants opposed.  (Docs. 53, 58, 60.)  On September 30, 2025, Defendants also filed a Motion for Partial Summary Judgment, which Claridge opposed.  (Docs. 54, 57, 59.)  On March 2, 2026, the Court granted in part and denied in part Defendants' Motion for Judgment on the Pleadings and dismissed Claridge's 30-minute claim under the vacated Final Rule.  (Doc. 61.)  The Court also granted Claridge's Motion for Partial Summary Judgment and denied Defendants' Motion for Partial Summary Judgment.  (*Id.*)

Between July 2025 and April 2026, the parties engaged in settlement negotiations, including exchanging emails and discussions between the parties' counsel. (Doc. 64 at 1261; Doc. 64-3 at ¶ 33.) On April 10, 2026, the parties reached a settlement agreement with the assistance of mediator Ed Sullivan. (Doc. 64 at 1259.)

On May 20, 2026, the parties filed the instant motion for approval of the settlement agreement. (*See id.*) The motion is supported by the declaration of Lori M. Griffin, one of Plaintiffs' counsel. (*See* Doc. 64-3.) The total settlement amount is $318,750.00. (Doc. 64 at 1262.) From the total amount, $193,792.55 will be divided into individual settlement payments to Plaintiffs. (*Id.*) The individual payments were calculated proportionally based on each plaintiff's alleged minimum wage damages during the released period. (*Id.*) Plaintiffs owed less than $15.00 or who were unable to demonstrate damages due to lack of records will receive a $15.00 payment. (*Id.*) The settlement agreement further provides $106,250.00 in attorney's fees, $10,707.45 in litigation and settlement administration costs, and a $8,000 service award to Claridge. (*Id.*)

## II.     STANDARD OF REVIEW

"The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299, 2008 WL 4724499, at *2, 2008 U.S. Dist. LEXIS 90070, at *11 (E.D. Ky. Oct. 23, 2008) (quoting 29 U.S.C. § 202). Generally, the FLSA's provisions are not subject to bargaining, modification by contract, or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) (holding policy considerations forbid waiver of rights created by the FLSA); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,

1352 (11th Cir. 1982) (FLSA provisions "are not subject to negotiation or bargaining between employers and employees"). There is an exception to this general rule when an employee brings a private action in a federal district court under 29 U.S.C. § 216(b) and presents the court with a proposed settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1352-53; *see also Pitty v. Conrad's Laserwash Co., Inc.*, No. 23-cv-2034, 2023 WL 7166917, at *1, 2023 U.S. Dist. LEXIS 194639, at *2-3 (N.D. Ohio Oct. 31, 2023) (collecting Sixth Circuit district court cases requiring court approval of FLSA settlements).

Upon review of a settlement of FLSA claims, "'[t]he Court must ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09-cv-1608, 2010 WL 2490989, at *5, 2010 U.S. Dist. LEXIS 58912, at *13 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (citing 29 U.S.C. §§ 206, 207). The Court "must scrutinize the proposed settlement for fairness to determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Pitty*, 2023 WL 7166917, at *1, 2023 U.S. Dist. LEXIS 194639, at *3 (citing *Bartlow v. Grand Crown Resorts of Pigeon Forge*, No. 11-cv-400, 2012 WL 6707008, at *1, 2012 U.S. Dist. LEXIS 181808, at *4 (E.D. Tenn. Dec. 26, 2012) quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

Courts consider several factors including: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; opinions of class counsel; and the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3, 2008 U.S. Dist. LEXIS 90070, at *14 (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d

615, 631 (6th Cir. 2007)).  When a settlement agreement proposes an award of attorney's fees, such fees must be reasonable.  *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

### III.    ANALYSIS

First, the Court finds this action presents a bona fide dispute, and the parties possess divergent views of the facts and the applicable law.  The parties' joint motion confirms the same. (*See* Doc. 64 at 1258, 1260; Doc. 64-3 at ¶ 34.)  The parties disagree whether Plaintiffs performed work unrelated to their tipped occupation, whether Plaintiffs spent more than 20% of their working hours performing non-tipped related work, and whether Plaintiffs would be entitled to liquidated damages where Defendants claimed they did not act willfully and had a good faith defense.  (*See id.*)

Next, the Court observes the settlement resulted from arm's-length negotiations between the parties and there is no risk of fraud or collusion.  *See, e.g.*, *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.")  (*See also* Doc. 64 at 1264; Doc. 64-3 at ¶¶ 26-33.)

Wage and hour class and collective actions are "inherently complex and time consuming."  *Arledge v. Domino's Pizza, Inc.*, No. 16-cv-386, 2018 WL 5023950, at *2, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018) (citation omitted).  Before reaching a settlement, the parties litigated this matter for over two and a half years and were preparing to litigate the issue further.  (*See* Doc. 64 at 1264; Doc. 64-3 ¶¶ 26, 52.)  The parties engaged in written discovery, conducted numerous depositions, substantial investigation, motion practice, and extensive settlement negotiations.  (*See* Doc. 64 at 1264; Doc. 64-3 ¶¶ 28-33.)  If the parties were to continue litigating, they would incur additional costs in litigation.  (*See id.*)  As for

success on the merits, by settling, the parties have guaranteed Plaintiffs a substantial recovery. (*Id.*)

Lastly, public policy supports approving the settlement.  Rather than requiring the parties to bear the uncertainty and risks surrounding trial and a possible appeal, "the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement." *Williams v. CG-HHC, Inc.*, No. 22-cv-1003, 2024 WL 1514587, at *2, 2024 U.S. Dist. LEXIS 63514, at *5 (N.D. Ohio Apr. 8, 2024).  "Settlement is the preferred means of resolving litigation."  *Crawford*, 2008 WL 4724499, at * 9, 2008 U.S. Dist. LEXIS 90070, at *31 (citations omitted).

The settlement agreement provides Claridge and all 144 opt-in plaintiffs with monetary compensation based proportionally on each plaintiff's alleged minimum wage damages during the released period.  (Doc. 64 at 1264; Doc. 64-3 at ¶ 41.)  These damages were calculated by multiplying the hours Plaintiffs were paid at the tipped wage rate by the difference between the applicable Ohio minimum wage rate and the tip credit wage rate, then by 35%.  (Doc. 64 at 1264-65; Doc. 64-3 at ¶ 42.)  Plaintiffs allegedly were denied $280,043.01 in minimum wages for performing unrelated and non-tipped work for 35% of the hours they worked in 100% of their work weeks.  (Doc. 64 at 1265; Doc. 64-3 at ¶ 44.)  Plaintiffs will receive approximately 97% of their minimum wage damages 25% of the time in 50% of the weeks they worked within the three-year statute of limitations period, plus an equal amount of liquidated damages.  (Doc. 64 at 1265; Doc. 64-3 at ¶ 45.)

The Court considers Plaintiffs' counsel's opinion that the settlement is fair, reasonable, and adequate.  (Doc. 64 at 1264-65; Doc. 64-3 at ¶ 38.)  The Court also finds the proposed allocation of settlement proceeds is fair because it "apportions funds based on the circumstances

of each class member's employment by Defendants." *Burnham v. Papa John's Paducah, LLC*, No. 18-CV-112, 2020 WL 2065793, at *4, 2020 U.S. Dist. LEXIS 75220, at *11 (W.D. Ky. Apr. 29, 2020). Additionally, the Court finds the settlement fair, reasonable, and adequate because Plaintiffs are receiving over 69% of their allegedly owed minimum wages. *See Carr v. Bob Evans Farms, Inc.,* No. 17-CV-1875, 2018 WL 7508650, at *4, 2018 U.S. Dist. LEXIS 228221, at *10 (N.D. Ohio July 27, 2018) (finding a 25% to 50% forfeiture of tip credit "well above" the average FLSA recovery amount of 7% to 11%) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 08-v-1694, 2010 WL 776933, at *8, 2010 U.S. Dist. LEXIS 20446, at *20 (N.D. Ohio Mar. 8, 2010)). (*See also* Doc. 64 at 1262, 1265.)

The Court finds the award of attorney's fees to Plaintiffs' counsel reasonable given the time spent on written discovery, depositions, motions, and settlement negotiations. There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). Under the percentage-of-the-fund method, "the court simply determines the percentage of the settlement to award the class counsel." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) ("percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"). Plaintiffs' counsel seeks $106,250.00 in fees, or 33% of the total recovery. (*See* Doc. 64 at 1262, 1265.) Plaintiffs' counsel notes this fee award is significantly less than Plaintiffs' counsel's lodestar. (*Id.* at 1262.) Other courts have found higher percentages reasonable. *See Williams*, 2024 WL 1514587, at *3, 2024 U.S. Dist. LEXIS 63514, at *7-8 (approving attorney's fees totaling slightly greater than 50% of the total monetary award"); *see also White v. Stark Cnty. Veterans Serv. Comm'n*, No. 22-cv-1493, 2023 WL 7130799, at *3,

2023 U.S. Dist. LEXIS 193634, at *10 (N.D. Ohio Oct. 30, 2023) (same).  (*See also* Doc. 64 at 1265-67 (collecting cases)).  Using this method, the Court finds the percentage of the settlement awarded to class counsel reasonable.

Additionally, the Court finds the litigation costs totaling $10,707.45 reasonable given the parties' discovery efforts, motion practice, efforts to contact opt-in plaintiffs, and mediation expenses.  (*See* Doc. 64 at 1267; Doc. 64-3 at ¶ 54.)

Lastly, the settlement agreement provides for an $8,000.00 incentive award for Claridge. (Doc. 64 at 1262.)  "Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Chambers v. A.R.E. Accessories LLC*, No. 23-cv-890, 2024 WL 3179702, at *4, 2024 U.S. Dist. LEXIS 112086, at *10 (N.D. Ohio June 26, 2024) (quoting *Dillworth*, 2010 WL 776933, at *7, 2010 U.S. Dist. LEXIS 20446, at *18).  Here, Claridge participated in the litigation, including sitting for a deposition.  (*See* Doc. 64 at 1261.) The Court approves the service award to Claridge in recognition of his service.

## IV.  CONCLUSION

For the reasons stated herein, the Court GRANTS the parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice.  (Doc. 64.)  The settlement is APPROVED.  This case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

**Date:**  July 6, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE